The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award except for minor modifications.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 13 April 1996 an employment relationship existed between plaintiff-employee and defendant-employer.
3. CNA Insurance Company is the carrier on risk.
4. The parties stipulated at the hearing plaintiff's compensation rate for 1996 exceeds the maximum weekly benefit and the compensation rate is $492.00.
5. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
6. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on 13 April 1996.
7. Plaintiff's medicals regarding this claim are admitted into evidence as Stipulated Exhibit #2 and include the following:
1) Pitt Orthopedic;
2) Washington Family Medicine;
3) Quadrangle/Physician's East;
4) Luke D. Cicchinelli, D. P. M.;
5) Genex Services, Inc.;
6) J. Greg Nelson reports; and
7) Wilson Orthopedic records.
8. Simpson Industries absence report is stipulated into evidence.
9. A CNA Risk Management letter to Dr. Barsanti, dated 30 September 1997, is stipulated into evidence.
10. The issues to be determined are whether plaintiff's current problems are related to his 13 April 1996 compensable injury; and, if so, to what, if any, benefits is he entitled?
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. On 13 April 1996 plaintiff was a 44-year old male employed by defendant-employer as a machine operator. Plaintiff had been employed by defendant-employer almost sixteen (16) years at that time.
2. Plaintiff sustained a compensable injury to his left ankle on 13 April 1996 when he stepped backwards onto a platform which was not secure. Plaintiff twisted his left ankle and experienced sharp pain; plaintiff's ankle later swelled. Plaintiff reported the accident to his supervisor and he sought medical treatment.
3. Plaintiff initially sought treatment from his family doctor, then to Physician's East, which referred plaintiff to Pitt Orthopedics where he received care by Dr. Wilhelmsen. Physician's East originally diagnosed plaintiff with a broken ankle and placed a cast on his left foot.
4. Plaintiff first saw Dr. Wilhelmsen on 24 April 1996. At that time plaintiff had some tenderness over the anterior talofibular ligament but his swelling had resolved. Dr. Wilhelmsen diagnosed plaintiff with a sprained ankle.
5. Plaintiff only missed approximately four (4) days of work at defendant-employer due to his ankle strain. Defendant-employer allowed plaintiff to perform primarily sedentary duties.
6. Dr. Wilhelmsen released plaintiff to return to work without restriction, noted plaintiff was at maximum medical improvement, had no tenderness and swelling and no permanent impairment. However, plaintiff was still experiencing pain in his left foot and walked with a slight limp.
7. Plaintiff continued working with defendant-employer and experienced increased pain in his left foot. In December 1996 plaintiff began employment at Simpson Industries as a machine operator.
8. Although plaintiff continued to experience pain in his left ankle and difficulty walking, he did not seek medical treatment again until 2 April 1997 from Dr. Luke Cicchinelli, a podiatrist, in Washington.
9. Prior to seeing Dr. Cicchinelli, plaintiff was walking in the parking lot of Simpson Industries when he felt his ankle "give way." The greater weight of the medical evidence is that plaintiff's ankle giving way was a continuation of the ankle problems plaintiff experienced as a result of his compensable injury with defendant-employer, rather than a new, intervening injury. Plaintiff had continuously experienced ankle pain since 13 April 1996 and tenderness was noted by Dr. Cicchenelli in the anterior talofibular ligament, the same location Dr. Wilhelmsen noted tenderness in April 1996. Plaintiff also saw his family doctor again.
10. Plaintiff later sought treatment in August 1997 from Dr. Barsanti, an orthopedist, in the same medical group as Dr. Wilhelmsen. A MRI revealed evidence of bone marrow edema with subchondral cystic change in the medial aspect of the talar dome. Dr. Barsanti recommended a diagnostic arthroscopy of the left ankle.
11. Defendants sent plaintiff to Dr. Nelson for a one-time visit for an independent medical examination with regard to the arthroscopy. Dr. Nelson did not recommend arthroscopy surgery prior to trying more conservative measures of injections.
12. Plaintiff returned to Dr. Barsanti and received injections to his ankle. These injections did not provide lasting relief. Dr. Barsanti referred plaintiff to Dr. Michael Glover.
13. Dr. Glover first treated plaintiff in May 1998. A bone scan and CT scan indicated an anomaly of the anteromedial talar dome. Dr. Glover performed arthroscopic surgery on plaintiff's left ankle on 3 August 1998. Plaintiff's surgery revealed large synovial fronds in the lateral side of the ankle. These fronds were outpouchings off the synovium that tend to hang in the joint and pinch between the bone of the tibia and the bone of the talus. Plaintiff's pain and symptoms after April 1996 were consistent with Dr. Glover's surgical findings.
14. Plaintiff last saw Dr. Glover on 16 September 1998 at which time he was released to full duty. At the time of the close of the record before the Deputy Commissioner Dr. Glover had not rated plaintiff. It is Dr. Glover's policy to not rate a patient until at least six (6) months post-surgery in order to allow for maximum improvement.
15. The greater weight of the evidence shows that plaintiff's left ankle problems in 1997 and subsequent surgery in 1998 are causally related to plaintiff's 13 April 1996 compensable injury by accident.
16. As a result of plaintiff's compensable injury he was unable to work at defendant-employer for four (4) days. When plaintiff began working at Simpson Industries in December 1996 plaintiff's duties originally included quality control and the position did not require a great deal of standing. Later plaintiff was transferred to primarily janitorial duties. As a result of ankle pain from plaintiff's 13 April 1996 compensable injury, plaintiff was unable to work or earn wages four (4) days with defendant-employer; nineteen (19) hours on 11 April 1997 due to sore ankle; .8 hours on 26 August 1997 due to an appointment with Dr. Barsanti; and from 29 August 1997 through 6 November 1997; from 17 December 1997 through 19 December 1997; from 12 February 1998 through 13 February 1998; 3 March 1998 through 9 March 1998; and from 1 April 1998 and continuing. Effective 1 April 1998 plaintiff had taken family and medical leave with Simpson Industries. At the time of the hearing before the Deputy Commissioner plaintiff's ankle had improved, but plaintiff had been unable to find employment.
17. At the time of the initial hearing plaintiff had requested vocational rehabilitation assistance but he was not qualified due to the Medicaid assistance for his surgery. If plaintiff is still unable to find employment at the time of the filing of this Opinion and Award, vocational assistance would be beneficial to help plaintiff find employment.
18. Defendants did not defend this matter without reasonable ground, as there existed issues of material fact.
***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury to his left ankle arising out of and in the course of his employment with defendant-employer on 13 April 1996. Plaintiff's left ankle problems following his treatment with Dr. Wilhelmsen and ultimate surgery by Dr. Glover are causally related to plaintiff's 13 April 1996 compensable injury. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's compensable injury, he is entitled to temporary total disability at his compensation rate of $492.00 per week for the four (4) days missed at defendant-employer, and for the following periods: 29 August 1997 through 6 November 1997; 17 December 1997 through 19 December 1997; 12 February 1998 through 13 February 1998; 3 March 1998 through 9 March 1998; and 1 April 1998 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to temporary partial disability at his compensation rate of $492.00 per week for the 2.7 hours plaintiff missed work on 11 April 1997 and 26 August 1997 as a result of his compensable injury. N.C. Gen. Stat. § 97-30.
4. Plaintiff has not received a disability rating from Dr. Glover and although released to return to full duty, the greater weight of the evidence is that plaintiff may not have reached maximum medical improvement by the close of the record. Plaintiff would benefit from vocational assistance.
5. Plaintiff is entitled to have defendants provide all medical treatment treatment arising from plaintiff's compensable injury on 13 April 1996 to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. §97-25.
6. Plaintiff is not entitled to attorney fees pursuant to N.C. Gen. Stat. § 97-88.1
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability for four (4) days missed at defendant-employer and for the following periods: 29 August 1997 through 6 November 1997; 17 December 1997 through 19 December 1997; 12 February 1998 through 13 February 1998; 3 March 1998 through 9 March 1998; and 1 April 1998 and continuing until further Order of the Commission at a rate of $492.00 per week. Those sums which have accrued shall be payable in a lump sum; and all amounts payable to plaintiff shall be subject to reasonable attorney fees, approved below.
2. Defendants shall pay temporary partial disability benefits in accordance with N.C. Gen. Stat. § 97-30 for the partial time of 2.7 hours plaintiff was unable to work on 11 April 1998 and 26 August 1997 at his compensation rate of $492.00 per week. Those sums have accrued and shall be payable in a lump sum, subject to reasonable attorney fees approved herein.
3. A reasonable attorney fee in the amount of twenty-five percent (25%) of the lump sums awarded plaintiff is due plaintiff's counsel and shall be deducted from the lump sums and payable directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be forwarded directly to plaintiff's counsel for attorney fees.
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injuries for so long as such treatments tend to effect a cure, give relief or lessen plaintiff's disability.
5. Defendants shall pay the costs.
This the ___ day of September 1999.
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER
LKM/bjp